JANUARY TERM, 1882, No. 274.    MARCH 9TH, 1882.

## Butz *versus* Butz.

1. The intention of a testator is to be collected not from any particular or detached clause of the will, but from the whole taken together.

2. A testator directed all the residue of his estate to be converted into money and to be divided into three hundred and sixty-five shares, and further directed that "all notes, bonds, mortgages, or other obligations, of whatsoever nature or date the same may be, I hold against my four children, named in this my will, shall be charged and deducted from their prospective shares, except the judgment which I hold against my son John Peter Butz, dated April 1st, 1876, for $4200." He then bequeathed to a trustee, " out of the money representing one hundred shares of the three hundred and sixty-five shares mentioned in the third article of my will, which is to be the bequest for the benefit of my son John Peter Butz and his children, the sum of eleven thousand dollars," upon certain trusts. There were devises and bequests indicating an intention of the testator to provide equally for his children, according to their respective ages. *Held,* that it was the duty of the executor to collect the judgment of $4200 against John Peter Butz and divide the proceeds with the rest of the estate.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Northampton County.*

Rule upon Thomas F. Butz, executor of the last will and testament of Thomas Butz, deceased, to show cause why the execution upon a judgment entered upon a warrant of attorney against John Peter Butz should not be set aside.

On the 15th of April, 1876, Thomas Butz entered up a judgment for $4200 upon a bond and warrant of attorney executed to him by his son John Peter Butz. Thomas Butz died in March, 1880, leaving personalty alone amounting to over $90,000, and considerable real estate. His debts did not exceed $3000. His executor issued an execution on the judgment, and levied upon real estate of the defendant, on which it was a first lien, and which was amply sufficient to secure it.

The will of Thomas Butz, dated September 24th, 1879, provided, *inter alia :* " And I would state that before disposing of my estate, that in former years I have given to my sons John Peter Butz and Thomas Franklin Butz, in farming stock and implements, and to my daughters Eliza Ann, intermarried with Daniel Troxell, and Elenora L. S., intermarried with Thomas Weaver, in household furniture and kitchen utensils, which property in my judgment placed all my children upon an equality in goods furnished by me.

I have further given as advancements to my four above-named children, to each of them at his or her arriving at the age of twenty-eight years, the sum of eight thousand dollars; and since then I have further given as advancements to my children as follows: To Thomas Franklin Butz one hundred shares of the capital stock of the Thomas Iron Company; to Eliza Ann, intermarried with Daniel Troxell, ninety-five shares of said stock, and to Elenora L. S., intermarried with Thomas Weaver, eighty-five shares of said stock; and one hundred shares of said stock, being certificate No. 2550, I give and bequeath to Thomas F. Butz in trust for my son John Peter Butz, as hereinafter directed. This statement I have made for the purpose of showing that I have thus far provided for my children equally according to their respective ages. . . . .

"*Third.* All the rest and remainder of my property, whether real, personal, or mixed, I order and direct that my hereinafter named executor convert into money, or its equivalent, for the benefit of my estate, as soon after my decease as may be convenient, to be divided into three hundred and sixty-five shares, and be distributed to and amongst my four above-named children according to their respective ages, and also a portion of the money representing the shares of my son John Peter Butz to be distributed to and amongst the children of my son John Peter Butz according to their respective ages.

"*Fourth.* All notes, bonds, mortgages, or other obligations of whatsoever nature or date the same may be, I hold against my four children named in this my will shall be charged and deducted from their respective shares, except the judgment which I hold against my son John Peter Butz, dated April 1st, 1876, for $4200, recorded in Northampton County, No. 190.

"*Fifth.* I give and bequeath unto my son Thomas F. Butz the money representing ninety-five shares of the three hundred and sixty-five shares mentioned in the third article of my will, to him and his heirs forever.

"*Sixth.* I give and bequeath unto my daughter Eliza Ann, intermarried with Daniel Troxell, the money representing ninety shares of the three hundred and sixty-five shares mentioned in the third article of my will, to her and her heirs forever.

"*Seventh.* I give and bequeath unto my daughter Elenora L. S., intermarried with Thomas Weaver, the money representing eighty shares of the three hundred and sixty-five shares mentioned in the third article of my will, to her and her heirs forever.

"*Eighth.* I give and bequeath unto Thomas F. Butz, out of the money representing one hundred shares of the three hundred and sixty-five shares mentioned in the third article of my will, which is to be the bequest for the benefit of my son John Peter Butz and his children, the sum of eleven thousand dollars, and also certificate No. 2550 of the capital stock of the Thomas Iron Company as before mentioned, in trust, however, that he the said Thomas F. Butz, who I hereby designate as the trustee of my son John Peter Butz, pay unto the said John Peter Butz during the time of his natural life, the interest on the said sum of eleven thousand dollars and all dividends declared on said No. 2550 certificate of stock, interest to be paid semi-annually and dividends as often as declared by the company, and for the faithful performance of said trust the said Thomas F. Butz is to enter into proper security, as may be directed by the Court of the county having jurisdiction; and after the death of my son John Peter Butz, which may happen either before or after my decease, then it is my will and I hereby direct that the money, to wit, the sum of eleven thousand dollars bequeathed in trust for the said John Peter Butz shall be divided and distributed to and amongst the lawful issue of my son John Peter Butz in the same proportion and upon the same condition and in trust as made and provided in the ninth article of my will.

"*Ninth.* The balance of the money representing one hundred shares of the three hundred and sixty-five shares mentioned in the third article of my will, after deducting the sum of eleven thousand dollars bequeathed in trust to Thomas F. Butz, for my son John Peter Butz, I give and bequeath unto my son Thomas Franklin Butz, in trust, however, for the children of my son John Peter Butz, said balance to be divided into four hundred and eighty shares, Sarah and Milton Butz each to have the interest during their natural lives of the money representing one hundred shares each, Maria and John Butz each to have the interest during their natural lives of the money representing ninety-five shares each, and Matilda Butz to have the interest during her natural life of the money representing ninety shares, and for the faithful performance of said trust the said Thomas F. Butz is to enter into proper security as may be directed by the Court of the county having jurisdiction, said money to be invested upon first mortgages in farm property; and I further order and direct that if the said trustee and *cestui que trusts* should deem it advantageous, real estate may be purchased with said trust-money, such real estate to be for the benefit of said *cestui que trusts* for and during the term

of their natural lives; and I further will and direct that the trust-money bequeathed to my grandchildren of my son John Peter Butz after their respective deaths shall be divided to and amongst their issue, if any, share and share alike. Should any of the grandchildren above mentioned die without issue, then the share of such grandchild shall be divided to and amongst the surviving brothers and sisters share and share alike to them and their heirs forever.

" *Tenth.* It is my will and I hereby direct, that after the death of my wife, Maria Elizabeth Butz, the sum of fifteen thousand dollars set apart, the interest of which she is to receive during her natural life, and the house and lot or the money thereof if it should be converted into cash by her, is to be divided into three hundred and sixty-five shares.

" *Eleventh.* It is my will and I so direct, that my son Thomas Franklin Butz shall have the money representing ninety-five shares of said estate bequeathed to my wife, to him and his heirs forever.

" *Twelfth.* It is my will and I so direct, that my daughter Eliza Ann shall have the money representing ninety shares of said estate bequeathed to my wife, to her and her heirs forever.

" *Thirteenth.* It is my will and I do direct, that my daughter Elenora L. S. shall have the money representing eighty shares of said estate bequeathed to my wife, to her and her heirs forever.

" *Fourteenth.* I give and bequeath out of the money representing one hundred shares of the said estate bequeathed to my wife, to my son John Peter Butz, the sum of one thousand dollars, and the balance of the money, after deducting the sum of one thousand dollars, I give and bequeath to my son Thomas Franklin Butz, in trust, however, for the children of my son John Peter Butz, to be divided amongst them and to be for the same intents and purposes as is provided in the ninth article of this my will."

The Court below, REEDER, A. L. J., discharged the rule, saying, *inter alia:*

" The grand maxim in the construction of wills is that the Court is bound to find out the intention of the testator, if it be possible so to do, and to make such construction as will effectuate that intention. This intention is to be collected not from any particular or detached clause of the will, but from the whole taken together.

" A careful examination of this will reveals an intention upon the part of the testator to provide 'equally for his children according to their respective ages.' This is shown by the legacy of the certificate of stock for one hundred

[Butz *v.* Butz.]

shares of the capital stock of the Thomas Iron Company, to
Thomas F. Butz as trustee for John P. Butz, for the 'purpose
thus far of providing for his children equally according to their
respective ages.' It is shown by the division of his estate,
after deducting the devise to the widow, into three hundred
and sixty-five shares, which is afterward subdivided 'accord-
ing to the respective ages' of his children. In point of fact,
his estate is not divided equally among his children. He
takes into consideration in the division their ages. How he
arrives at the different fractions of his estate, how he ap-
portions the different shares according to the ages of his
children, is not apparent from the will, but that the calcu-
lation is based upon an effort to provide for them equally in
the division of his estate, having in view the difference in
their age, is manifest throughout the whole will. After the
division of his estate into four parts, 'according to the ages
of his children,' the 'bequest to John Peter Butz and his
children' is not devised to John Peter Butz, but in part to
Thomas F. Butz in trust for John Peter Butz, after his death
in trust for the children of John Peter Butz, and after their
death to their children, and in part to the use of the children
of John Peter Butz with remainder to their children. This
is a difference as to the disposition of 'the bequest to John
Peter and his children,' not a difference as to the amount he
and his children would receive. Even if the intention to
provide equally for his children was not apparent from the
will itself, it has been held 'that when the meaning of a will
is doubtful, the rule of equality among children must be
taken as a guide to its interpretation:' Malone *v.* Dobbins,
11 Harris, 296; Weber's Appeal, 17 Penna. Stat. Rep., 474;
Minter's Appeal, 40 Penna. Stat. Rep., 111. We start, there-
fore, by finding that it was the intention of the testator to
divide his estate into four shares, making the only difference
in the shares the one based upon the difference in years of
his four children.

"The testator charges all the 'notes, bonds, mortgages, or
other obligations, of whatsoever nature or date the same may
be,' held against his children, against their respective shares
of his estate, 'except the judgment which I hold against my
son, John Peter Butz.' Why does he make this distinction
between this particular debt of his son John and the debts
due from his other children? Is it because he means to dis-
charge the debt due from John in the judgment, and thus
give to John $4200 more than to the other children? This
is contradicted by the intention of the testator, manifested
throughout his will, to make the only difference in the four
shares the difference in age of his four children. He devises

nothing to John Peter Butz from which the judgment could be deducted; one of the four shares the testator devises to John Peter Butz, his children and grandchilden, providing that the said John Peter Butz shall have the interest on but $11,000 of said share, and no more. The residue of this share being devised in trust for the children of John Peter, with remainder to their children, 'which is to be the bequest for the benefit of my son John Peter Butz and his children.' The testator speaks of this as being the bequest to John Peter Butz and his children. It does not say this together with the judgment which I hold against him shall be the bequest, but speaks of this portion as '*the* bequest.' For some reason, which does not appear from the will, the testator does not desire to permit his son, John Peter Butz, to control the principal, or any portion of the principal devised for the benefit of himself and children, and hence it would appear that he desires this judgment paid by his son John, and, if not paid, then collected by legal process from the real estate upon which it is a lien, and the bequest for the benefit of his son John and his children to remain intact, in such shape that he cannot expend any portion of the principal of said share. The testator does not mention in any way the judgment in connection with the bequest to his son John Peter Butz and his children. He does not except the judgment when he directs that his estate, after deducting the devise to his widow, 'shall be divided into three hundred and sixty-five shares, to be distributed among his four children, . . . according to their respective ages.' This balance so to be divided includes all the notes, bonds, mortgages, and other obligations due from all the children, and, before directing the same to be divided as set forth in the third section of the will, he directs that this balance shall be converted into money, or its equivalent. A literal observance by the executor of this item would necessitate the payment by each legatee of the debts due from him, and the receipt by him of his entire share without any charge against it. Seemingly to avoid this, he directed in the fourth item of his will that all notes, bonds, etc., due from any of his children shall be deducted from their share. In point of fact, he directs his executor to take such debts into account as assets of the estate, and afterward to deduct the amount from their share in the distribution, without actually collecting them.

" 'Except the judgment due from John Peter Butz.' That is, the balance of his estate is to be converted into money and divided, etc., etc. The debts due from the legatees shall not be collected from them, except the judgment due from John Peter Butz. Therefore the judgment against John

Peter Butz, under the third item of the will, will have to be converted by the executor into money, or its equivalent, and be divided with the rest of the estate as is therein directed."

The defendant then took out a writ of error, assigning that the Court erred in not granting the prayer of the petitioner to set aside the execution, and to restrain the plaintiff from issuing execution in the future.

*Edward J. Fox,* for plaintiff in error.

The decision is based on the idea that the testator meant to divide his estate equally among his children. There is nothing in the will to warrant the assumption. The fourth and third clauses show that the fund to be divided was to be composed of the proceeds of sale of his realty and personalty, of the stock specifically bequeathed in trust, and of the obligations held against his four children, with the one exception of the judgment held against John Peter Butz.

In the opinion of the Court below, the testator intended to have his son sold out by the sheriff and deprived of a home, and has not awarded him the privilege of having the debt set off against his legacy as he did in the case of the other children.

This interpretation causes the amount of the judgment, when received, to be added to the residuary fund and distributed, which the will says plainly shall not be done: 2 Williams on Executors, 1119; Eden *v.* Smyth, 5 Vesey, 341; Aston *v.* Pye, 5 Vesey, 350.

*Morris L. Kauffman,* for defendant in error.

Doubt might arise under the fourth clause if alone, but the construction must be that which is consistent with the whole scheme of the will: Middleswarth *v.* Blackmore, 74 Penna. Stat., 414.

The testator desired to distribute his estate according to his own idea of equality. The shares were to be proportioned according to the respective ages of the children.

Taking the scheme of the testator and all the other provisions of the will into consideration, the *fourth article* should be construed to mean, that all claims against his children who receive their portions absolutely should be deducted from their respective shares, but the share of John Peter Butz being given entirely into the hands of trustees, he has no share from which the judgment can be deducted, therefore the executor is to collect the same according to the *third article*, which directs that "all the rest and remainder of my property, whether real, personal, or mixed, I order and direct that my hereinafter named executor convert into money, or

its equivalent, for the benefit of my estate, . . . to be divided into three hundred and sixty-five shares," etc.

If the testator had intended to extinguish the debt, and release John Peter Butz from the obligation to pay the judgment, the testator would have excluded it from the assets of his estate, which he directs to be divided into three hundred and sixty-five shares.

Under the will, none of the claims which the testator held against his children are to be excluded from the assets.

If John Peter Butz would have been released from the payment of this judgment, then he would have received $4200 more than the one hundred shares, as his portion, and consequently the decedent's estate would not have been equally divided among his children according to their respective ages.

The testator distinctly says in the eighth article, that the one hundred shares are " to be the bequest for the benefit of my son John Peter Butz and his children."   Nowhere in the will does it appear that he is to receive in addition thereto the $4200 secured by the judgment: Malone v. Dobbins, 11 Harris, 296; Weber's Appeal, 17 Penna. Stat., 474; Minter's Appeal, 40 Penna. Stat., 111; Horwitz v. Norris, 10 P. F. Smith, 261.

MARCH 20TH, 1882.—PER CURIAM: We affirm this judgment upon the opinion of the learned judge in the Court below.

Judgment affirmed.

---

JULY TERM, 1881, No. 27.

# The First National Bank of Bethlehem
## versus Peisert.

1. Knowledge acquired by the president of a bank in the course of its business that moneys deposited with it by a depositor in his individual account belonged to an estate of which he was the assignee for the benefit of creditors, affects the bank with notice.

2. Such moneys cannot be appropriated by the bank to the payment of notes held by it, made or indorsed by the depositor, where the president has such knowledge, though no actual notice of the trust has been given to it.

3. Moneys so appropriated may be recovered back by the assignee.

4. Harrisburg v. Tyler, 3 W. & S., 373, followed.